UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION


C.M.C (XXX-XX-8897)                          CIVIL ACTION NO. 14-cv-2365

VERSUS                                       JUDGE HICKS

CAROLYN W. COLVIN, ACTING                    MAGISTRATE JUDGE HORNSBY
U.S. COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION


**REPORT AND RECOMMENDATION**

**Introduction**

      C.M.C. ("Plaintiff") was born in 1958 and has a ninth-grade education.  She has past

work experience in jobs such as manager of an apartment complex and admitting technician

at a hospital.  Plaintiff left her job as an apartment manager in 2008 because back pain and

similar problems limited her ability to walk up and down stairs, perform light maintenance,

and other requirements of the job.  She applied for disability benefits in 2012.

      ALJ Francine L. Applewhite held a hearing and issued a written decision that found

Plaintiff was not disabled.  The Appeals Council denied a request for review, which made

the ALJ's decision the final decision of the Commissioner.  Plaintiff filed this civil action to

seek judicial review pursuant to 42 U.S.C. § 405(g).  For the reasons that follow, it is

recommended that the Commissioner's decision be reversed and the case be remanded for

further proceedings.

**Summary of the ALJ's Decision**

The ALJ analyzed the claim pursuant to the five-step sequential analysis set forth in

20 C.F.R. § 404.1520 (disability insurance benefits) and § 416.920 (Supplemental Security

Income) and described in Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005).  She found

that Plaintiff had not engaged in substantial gainful activity since her alleged onset date (step

one) and that she suffered from degenerative joint disease, obesity, hypertension, and

fibromyalgia, which were severe impairments within the meaning of the regulations (step

two).  The impairments were not so severe, however, to meet the demands of a listed

impairment (step three) that would require a finding of disabled without further analysis.

Before going from step three to step four, the ALJ assessed Plaintiff's residual

functional capacity ("RFC"), which is a determination of the most the claimant can still do

despite her limitations.  The ALJ found that Plaintiff had the RFC to perform the demands

of sedentary work (the least demanding category of work) subject to the additional limitation

that she could only occasionally climb stairs or ramps, occasionally stoop, crouch, crawl

and/or kneel, she could never climb ladders, ropes, or scaffolds, and she would be off-task

five percent of an eight-hour workday.

Step four asks whether the claimant is capable of performing her past relevant work.

A vocational expert ("VE") attended the hearing, listened to Plaintiff testify, and had access

to the record.  The ALJ asked the VE whether a person with Plaintiff's RFC could perform

any of Plaintiff's past relevant work.  The VE testified that such a person would be able to

perform the jobs of appointment clerk and hospital admitting clerk. Tr. 52-55.  The ALJ, in

reliance on that testimony, found that Plaintiff was not disabled because she could perform her past relevant work of hospital admitting clerk and appointment clerk as actually and generally performed.  That ended the analysis, and there was no need to address step five.

**Issues on Appeal; Standard of Review**

Plaintiff raises two issues on appeal: (1) the ALJ erred in relying on the jobs of hospital admitting clerk and appointment clerk when there was not evidence in the record that Plaintiff performed those jobs at a level that would qualify them as past relevant work; and (2) the ALJ erred in her assessment of the medical evidence and testimony when determining Plaintiff's RFC.  As explained below, the undersigned finds that the second issue merits reversal and remand.

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards.  Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990).  "Substantial evidence is more than a scintilla and less than a preponderance.  It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991).  A finding of no substantial evidence is justified only if there are no credible evidentiary choices or medical findings which support the ALJ's determination.  Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).

**Past Relevant Work**

An Agency employee completed a disability report with information provided by Plaintiff.  The job history section asked for information regarding jobs held in the prior 15 years.  One listed job was "admitting tech" at DeSoto Hospital in 2004 and 2005.  The form asked for the months during which the job was held, but that information was not placed on the form.  The form indicated that Plaintiff worked at that job eight hours per day, five days per week, and was paid $6 per hour.  The form also listed the jobs of cashier at a truck stop, manager of an apartment complex, and bookkeeper at a machine shop.  Tr. 150.

Plaintiff also completed a Work History Report in her own handwriting.  She listed the same jobs, plus jobs at unspecified dates as helper/cashier at a cleaners and a store.  One listed job was described as "check-in clerk" at a hospital.  The form asked for the month and year for the dates worked, but Plaintiff wrote, "can't recall dates."  Tr. 167.  Plaintiff described the job on another portion of the form as checking in patients in the emergency room, collecting co-payments, and similar duties.  She repeated that the job paid $6 per hour and was for eight hours per day, five days per week.  Tr. 172.

Plaintiff was not represented at the hearing.  The ALJ asked Plaintiff about her last employment, and Plaintiff described her job as manager of an apartment complex, and she mentioned a position as cashier at the Relay Station near Frierson.  The ALJ then asked, "I have you working as an admitting technician.  What was that?"  Plaintiff answered: "Admitting technician?  No, ma'am, I don't even know what that is."  Tr. 37-38.  Plaintiff went on to discuss performing "secretarial stuff" for her daughter's father in his machine shop.  Tr. 38 and 39.

Page 4 of  15

When the ALJ later called on the VE, she asked if the VE needed any further testimony from Plaintiff about her work history.  The VE asked Plaintiff if she had ever worked at DeSoto Regional Hospital.  Plaintiff, her memory apparently jogged, answered: "Yes, ma'am, I did."  The VE then asked: "Okay, were you admitting clerk?"  Plaintiff answered, "yes, ma'am, I was."  Tr. 51-52.  That was the extent of the information the ALJ obtained from Plaintiff about her past employment.

The VE then told the ALJ that she was ready to proceed, and the VE listed the jobs of hospital admitting clerk, appointment clerk, and short order cook, together with their DOT identifying numbers and basic demands.  The VE said: "And that would conclude past, relevant work, your honor."  Tr. 52.  The ALJ then asked the VE a series of hypothetical questions that included the limitations reflected in Plaintiff's RFC.  The VE testified that such a person could perform the demands of appointment clerk and hospital admitting clerk.  Tr. 54-56.

Past relevant work refers to work that was performed within the last 15 years, lasted long enough for the person to learn to do it, and was substantial gainful activity.  20 C.F.R. §§ 404.1565(a), 416.965(a).  The regulations provide that the primary consideration in evaluating whether work activity is substantial gainful activity will be the earnings derived from it.  "Generally, if you worked for substantial earnings, we will find that you are able to do substantial gainful activity.  However, the fact that your earnings were not substantial will not necessarily show that you are not able to do substantial gainful activity."  20 C.F.R. § 404.1574(a)(1), 416.974(a)(1).

The regulations provide a formula for determining a monthly amount that is adjusted to reflect national wage growth.  They provide that if the worker's "average monthly earnings" are equal to or less than the amount for the years worked, the Agency will generally consider that those earnings do not reflect substantial gainful activity. §§ 404.1574(b)(3), 416.974(b)(3).  Another regulation provides that the Agency "will average your earnings over the entire period of work requiring evaluation to determine if you have done substantial gainful activity."  20 C.F.R. § 404.1574a(a).  If a claimant's earnings are below the threshold set by the regulations, there is a rebuttal presumption against substantial gainful activity.  Copeland v. Colvin, 771 F.3d 920 (5th Cir. 2014).

Plaintiff argues that there is no evidence, either in the written submissions or testimony, that she ever performed job activities that matched that of appointment clerk. That job is defined in DOT 237.367-010 as a person who schedules appointments for clients or customers, records time and date of appointment, may phone or write clients to remind them of appointments, and receives payments for services.  Plaintiff did write, in describing her job as hospital admitting clerk, that she checked in patients, collected money for co-payments, and "if I was not busy, I would get patients ready for their doctor's appointments in hospital next day."  Tr. 172.  It seems a stretch to take that information and make the position an appointment clerk, and it is not even explained by the VE or ALJ whether that is what happened.  In any event, the Commissioner has not offered any argument in defense of Plaintiff's attack on the appointment clerk job.  Accordingly, the undersigned finds that

there is not substantial evidence to support the finding that Plaintiff had past relevant work as an appointment clerk.

Plaintiff admits that she did work as a hospital admitting clerk, which is defined in DOT 205.362-018 as a person who interviews incoming patients and enters into a computer information required for admission, explains hospital regulations such as visiting hours and charges, escorts patients, and the like.  Plaintiff contends that her employment in that position did not qualify as past relevant work because her earnings were not sufficient.

Plaintiff indicated on one form that she held the job during unspecified months in 2004 and 2005.  The monthly substantial gainful activity amounts for those years were $810 and $830 per month.  An earnings report indicates that Plaintiff earned (1) $6,988.67 in 2004 and (2) $4,452.34 in 2005.  Plaintiff divides those amounts by 12 months and reaches monthly earnings of $582 and $371, which fall below the threshold.  The Commissioner responds that it is not known whether Plaintiff worked all 12 months in either of those years, and Plaintiff indicated that she earned an hourly rate that, if she worked four weeks per month, would have generated $960 per month.  (Plaintiff wrote on her job history that she was paid $6 per hour and worked eight hours per day, five days per week.)

The record contains evidence from Plaintiff that her ordinary weekly earnings were sufficient to have surpassed the SGA monthly limit during the years at issue.  There is no evidence that Plaintiff worked a sufficient number of months during 2004 and 2005 to cause her annual total to call into question whether Plaintiff actually earned that monthly amount during the relevant months.

The court reviews a factual matter such as this by asking whether the ALJ's decision is supported by substantial evidence on the record as a whole.  This is more than a mere scintilla and less than a preponderance.  It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  The court may not reweigh the evidence or substitute its judgment.  Copeland, 771 F.3d at 923, citing Perez, 415 F.3d at 461.

The undersigned finds that there is substantial evidence in the record that the earnings from the admitting clerk job exceeded the SGA level over the course of several months.  The record does not include definitive evidence of what Plaintiff earned in what months, but there is enough information from Plaintiff herself for a reasonable mind to accept as adequate that she did earn, over the course of several months, more than $810 and $830 per month from her job as an admitting clerk.

**Residual Functional Capacity**

The ALJ found that Plaintiff had the RFC to perform the demands of sedentary work, subject to the additional limitation that she could only occasionally climb stairs or ramps, occasionally stoop, crouch, crawl and/or kneel, she could never climb ladders, ropes, or scaffolds, and she would be off-task five percent of an eight-hour workday.  Plaintiff argues that the ALJ lacked substantial evidence to support the finding that she could perform the walk/stand/sit/lift requirements of sedentary work.  The undersigned agrees with her with regard to her sitting ability, and that is enough to warrant reversal.

Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Sitting should generally

total approximately six hours of an eight-hour workday, but a certain amount of walking and standing is often necessary to carry out job duties.  A job is sedentary if walking and standing are required occasionally (up to a total of two hours per workday) and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a) and 416.967(a);  Social Security Ruling 83-10.

Plaintiff testified (Tr. 40-52) that she was 5'3" and weighed 180 lbs.  She lived in a first-floor apartment, by herself except when her college-age daughter visited.  Plaintiff was earning $100 a month watching a nine-year-old girl for a neighbor during after-school hours.  She otherwise did not work and no longer drove a car.  When asked what prevented her from working, Plaintiff cited fibromyalgia, three problematic discs in her back, and circulation problems that cause her legs to swell to the point of bleeding if she stays on her feet too long.  Plaintiff said she was not supposed to lift over two pounds.  She also described panic attacks and other mental health problems.

The ALJ asked Plaintiff how long she could sit before it became unbearable.  Plaintiff said she had broken her tail bone twice and could perhaps sit a couple of hours in a soft chair, but she could not sit for more than about 15 minutes in a hard chair.  The ALJ asked her how many hours total she could sit in an eight-hour day if she could get up and move around every 15 minutes.  Plaintiff estimated a total of two hours.  Plaintiff said she attends church services most Sundays.  Services last a couple of hours, but she has to stand during that time.  "I can't just sit in the pews."  She said she did well standing and could do so for probably two or three hours total.  She estimated that she could walk a mile or two at a slow pace, but she never knows when her legs will give out beneath her.  Plaintiff testified that she could

Page 9 of  15

prepare her own meals and wash dishes, but she has someone else vacuum for her.  She said if she does the sweeping, then she can't do the mopping, so it is one or the other.  She can do her own laundry, make her own bed, and brush her hair.  Plaintiff also complained of numbness in her hands.

The ALJ noted that medical records revealed a diagnosis of degenerative joint disease of the lumbar spine with radiculopathy.  Plaintiff had also been diagnosed with fibromyalgia and hypertension.  A 2011 MRI revealed dessication of the L4-L5 and L5-S1 disc.  Bulging and narrowing of the spinal canal was noted at L4-L5.  There was more severe disc bulging at L5-S1.

Plaintiff testified that she had cared for her mother during an illness.  Plaintiff went to the doctor on October 4, 2011 and reported that her lower back pain had been present for one or two months but recently worsened because she had to lift her mother, which may have caused a strain.  The medical record notes associated stiffness, spasm, and pain/numbness down the right lower extremity.  Plaintiff had a hard time sitting or getting on the exam table.  Her instructions included to avoid lifting more than five pounds.  She was encouraged to walk slowly and stretch as tolerated.  Tr. 235-36.

Plaintiff returned on October 18 and reported that medications had not helped.  Her pain was worse with bending and sitting.  Medications were prescribed, and Plaintiff was again advised to rest and not lift more than five pounds.  Tr. 231-33.  By December 2011, Plaintiff still complained of pain.  She was prescribed acetaminophen and instructed to lift

with her knees and no more than 10 pounds. Exercise such as walking or swimming was advised. Tr. 217-19.

Dr. James Zum Brunnen, an orthopedic specialist, conducted a consultative examination in December 2012. He noted that Plaintiff got around exceedingly slowly, seemingly because of knee difficulty and some recent fractures of toes on the right foot. Cervical spine examination showed no restriction of motion. He wrote that Plaintiff "is very limited in her abilities in a number of areas." He stated that she had "lifting restrictions of 20 lbs. occasionally" and cannot do repetitive gripping or feeling with her fingers because of carpal tunnel syndrome. Her right leg is weak and gives out at the knee, causing falls. Dr. Zum Brunnen stated that he did not have any X-rays, but he opined that Plaintiff had lumbar restrictions because of a history of bulging discs and surgery with residuals. "She should not sit for more than 1 hour at a time" and should not engage in repetitive stooping, bending, or twisting. He completed a functional capacity assessment form that indicated similar limitations, including the inability to sit for more than one hour at a time, and no more than three hours total per workday. Tr. 346-53.

The ALJ stated that she afforded "persuasive weight" to the assessment of Dr. Zum Brunnen, but she also wrote that Plaintiff "is not as limited as Dr. Zum Brunnen indicates." She did not give specific reasons for discounting any aspects of his opinion, and she did not point to any competing findings from a physician that would indicate Plaintiff did not have the limitations Dr. Zum Brunnen suggested. The ALJ found that Plaintiff could sit six hours

in a workday, which was necessary to support her RFC but inconsistent with the opinion of

Dr. Zum Brunnen that Plaintiff could sit no more than three hours per day.  Tr. 18-19.

Plaintiff undeniably has medical problems with her back that create difficulty sitting.

Dr. Zum Brunnen's opinion suggests a sitting limitation greater than found by the ALJ.  An

ALJ is entitled to weigh the evidence, including opinions from medical sources, but she may

not substitute her medical judgment for that of a physician.   There might be grounds to

discount Dr. Zum Brunnen's opinion, although the ALJ did not specify any, but there is no

other medical evidence in the record on which the ALJ can rely to support the lesser degree

of sitting limitation that she found.

It has been held in similar cases that the absence of a medical opinion or evidence

establishing that the claimant could perform the exertional demands found by the ALJ meant

that the determination is not supported by substantial evidence.  See Ripley v. Chater, 67

F.3d 552, 557-58 (5th Cir. 1995).  In Williams v. Astrue, 355 Fed. Appx. 828 (5th Cir. 2009),

the ALJ gave good reasons to decline to give controlling weight to the opinions of treating

physicians and found that the claimant could perform light work.  The Fifth Circuit found

that, assuming the ALJ was entitled to not give controlling weight to the physician's

opinions, there still must be evidence to support the finding that the claimant could stand and

walk for six hours in a day. The ALJ could not rely on his own medical opinion as to those

limitations.  Williams, citing Ripley, remanded.

This case is similar.  Even if the ALJ had given good reasons to discount the opinion

of Dr. Zum Brunnen, she did not point to evidence from an accepted medical source that

Page 12 of  15

affirmatively supports her finding that Plaintiff can sit for six hour per day.   The lack of such

medical evidence deprives the Commissioner's decision of substantial evidence.  See G.D.C.

v. Commissioner, 2010 WL 3522448 (W.D. La. 2011) and  K.D.H. v. Commissioner, 2010

WL 3037269 (W.D. La. 2011) (both reversing and remanding in similar settings).  Plaintiff's

testimony also indicates a sitting limitation greater than found by the ALJ, so her testimony

cannot serve as substantial evidence to support the RFC.

Reversal is not required for a mere harmless error.   Palomo v. Barnhart, 154

Fed.Appx. 426, n. 13 (5th Cir. 2005).  But the error in this case was not harmless.  The DOT

indicates that the hospital admitting clerk job identified by the VE is sedentary and involves

sitting most of the time. There is no medical source evidence relied on by the ALJ that finds

Plaintiff could sit for the required time.  Absent such evidence, the court cannot say that the

mistake did not harm Plaintiff's substantial rights.

**Conclusion**

Reversal and remand are warranted because of the lack of evidence that Plaintiff could

perform the sitting demands of the identified job.  But that does not limit Plaintiff and the

agency from further exploring on remand the details of Plaintiff's work history or any other

relevant matters.  See 20 C.F.R. § 404.983 (following a federal court remand, "[a]ny issues

relating to your claim may be considered by the administrative law judge whether or not they

were raised in the administrative proceedings leading to the final decision in your case.").

See also Social Security Law and Practice, § 55:74 (there is ordinarily "no limit on a

Page 13 of  15

claimant's supplementing the record on remand" after a sentence four or sentence six remand).

Accordingly,

**IT IS RECOMMENDED** that the Commissioner's decision be reversed and, pursuant to sentence four of 42 U.S.C. § 405(g), the case be remanded to the Agency for further proceedings.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 25th day of February,

2016.

Mark L. Hornsby
U.S. Magistrate Judge